UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH J. SPINKS,

     Plaintiff,

v.                                   Case No. 3:14cv329/LC/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act"). The case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-83.

     Upon review of the record before the court, the undersigned concludes the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed and the applications for DIB and SSI denied.

## ISSUES ON REVIEW

Mr. Spinks, who will be referred to as claimant, plaintiff, or by name, raises three issues.  He claims: (1) the administrative law judge ("ALJ") erred by not giving great weight to the opinion of Mr. Spinks' treating physician, Dr. William Belk; (2) the ALJ's finding that Mr. Spinks is capable of performing medium work is not supported by substantial evidence; and (3) the ALJ erred by failing to properly assess Mr. Spinks' mental residual functional capacity as required by SSRs 96-8p and 85-15. (Doc. 10, p. 5).

## PROCEDURAL HISTORY

On December 12, 2012, Mr. Spinks filed applications for DIB and SSI, alleging disability beginning on May 5, 2011.  T. 52, 62, 193-203.  The applications were denied initially, T. 52, 62, and upon reconsideration.  T. 72, 82.  Plaintiff appeared before the ALJ for a hearing on February 18, 2014.  T. 15.  On February 28, 2014, the ALJ issued a decision denying claimant's applications for DIB and SSI.  T. 12-29. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

• Claimant meets the insured status requirements of the Social Security Act through December 31, 2016.  T. 17.

• Claimant has not engaged in substantial gainful activity since May 5, 2011, the alleged onset date.  T. 17

• Claimant  has the following severe impairments: degenerative disc

disease of the cervical spine, status post cervical fusion, obesity and hypertension. T. 18.

•   Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  T. 18.

•   Claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  Claimant could lift and carry no more than fifty pounds occasionally and twenty pounds frequently.  Claimant would have no restriction on standing, sitting or walking.  Claimant is unable to use overhead reaching bilaterally.  Claimant should avoid all climbing of ladders or scaffolds.  Claimant should avoid all unprotected heights and dangerous equipment. T. 19.

•   Claimant is unable to perform any past relevant work.  T. 23.

•   Claimant was born on May 28, 1959, and was 51 years old, which is defined as an individual closely approaching advanced age, as of the claimed disability onset date.  T. 24.

•   Claimant has at least a high school education and is able to communicate in English.  T. 24.

•   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills.  T. 24.

•   Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that claimant can perform.  T. 24.

•       Claimant has not been under a disability, as defined in the Social Security Act, from May 5, 2011, through February 28, 2014.  T. 25.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).   Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).    A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[1]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

---

[1] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

1.    If  the  claimant  is  performing  substantial  gainful  activity,  he  is  not disabled.

2.    If  the  claimant  is  not  performing  substantial  gainful activity,  his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If  the  claimant's  impairments  do  not  prevent  him  from  doing  his  past relevant work, he is not disabled.[2]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is generally where the rubber meets the road.  At that point, the ALJ formulates  the  all-important  residual  functional  capacity.   The  ALJ  establishes residual  functional  capacity,  utilizing  the  impairments  identified  at  step  two,  by interpretation  of  (1)  the  medical  evidence,  and  (2)  the  claimant's  subjective complaints (generally complaints of pain).  Residual functional capacity is then used

---

[2] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

Case No. 3:14cv329/LC/CJK

by the ALJ to make the ultimate vocational determination required by step five.[3]
"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's]
limitations."[4]   20 CFR §§ 404.1545(a)(1), 416.945(a)(1).   Often both the medical
evidence and the accuracy of a claimant's subjective complaints are subject to a
degree of conflict, and that conflict leads, as in this case, to the points raised on
judicial review by the disappointed claimant.

---

[3] "Before we go from step three to step four, we assess your residual functional capacity.
(See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step
four and step five when we evaluate your claim at these steps."  20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).

[4] In addition to this rather terse definition of residual functional capacity, the Regulations
describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your
> residual functional capacity based on all of the relevant medical and other evidence.
> In general, you are responsible for providing the evidence we will use to make a
> finding about your residual functional capacity.  (See § 416.912(c).)  However,
> before we make a determination that you are not disabled, we are responsible for
> developing your complete medical history, including arranging for a consultative
> examination(s) if necessary, and making every reasonable effort to help you get
> medical reports from your own medical sources.  (See §§ 416.912(d) through (f).)
> We will consider any statements about what you can still do that have been provided
> by medical sources, whether or not they are based on formal medical examinations.
> (See § 416.913.)  We will also consider descriptions and observations of your
> limitations from your impairment(s), including limitations that result from your
> symptoms, such as pain, provided by you, your family, neighbors, friends, or other
> persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

Case No. 3:14cv329/LC/CJK

## FACT BACKGROUND AND MEDICAL HISTORY[5]

At the hearing before the ALJ, Mr. Spinks offered testimony as to his health, daily activities, and work experience.  Claimant worked as a custodian for Escambia County until he injured his neck while stacking supplies.  T. 34.  Escambia County fired him because they had no job that entailed only light duty.  T. 34.  In 2011 and 2012, he was self-employed cleaning condos and performing yard work.  T. 34-35.  His son worked with him and performed the more strenuous activities.  T. 37-39.  Because the work was only part-time, Mr. Spinks received unemployment benefits in 2012.  T. 35.  In December of 2012, plaintiff stopped working because of pain and filed an application for disability benefits.  T. 35, 38.

As for his physical capabilities, claimant testified he can stand without pain for "a couple of hours."  T. 39.  If active while standing, he suffers from pain in his legs, neck, and arms.  T. 39.  The pain, as well as medication, causes drowsiness.  T. 39-40, 42-43.  He rates his pain as a "seven and a half" with medication.  T. 40.  Three days a week, pain leaves him bedridden.  T. 40-41.  He is capable of lifting eight to ten pounds with two hands.  T. 41.  Due to pain in his right arm, he is no longer able to play sports with his son.  T. 41-42.  He must lie down for four to six hours after performing activities like housework.  T. 42-43.[6]

---

[5] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

[6] A vocational expert also testified at the hearing.  T. 43-48.  Because plaintiff's brief does not raise issues concerning the vocational expert's testimony, a synopsis of it has not been included.

Case No. 3:14cv329/LC/CJK

Medical records also appear in the evidence before the Commissioner.  William Belk, M.D., entered the medical picture as Mr. Spinks' primary care physician on March 9, 2010.  T. 281.  Dr. Belk's notes indicate plaintiff previously underwent "cervical laminectomy; [f]usion" in 2004.  T. 275, 281.  Claimant reported the "surgery did not fix the pain." T. 281.  A physical exam of plaintiff's neck revealed it was "supple.  No cervical lymphadenopathy [was] noted.  No Bruits or  Masses." T. 282.  Dr. Belk prescribed Lortab and Ultram for pain.  T. 282.  Shortly thereafter, on July 13, 2010, claimant reported to Dr. Belk "that he 'overdid it' with his pain medications."  T. 279.  Upon receipt of his pain pills each month, "they are gone almost immediately."  T. 279.  He also admitted "to obtaining narcotics by illegal means in the past."  Plaintiff reported visiting the emergency room for pain; the hospital advised him to see a chronic pain specialist.  T. 279.  Dr. Belk prescribed Mobic for pain.  T. 279.  Plaintiff, however, reported "no pain" on July 13, and August 17, 2010.  T.  277, 279.

Claimant's complaints of pain returned on July 29, 2011.  T. 275.  He indicated he could "no longer go to pain management" after losing his job and insurance.  T. 275.  Dr. Belk prescribed Ultram to treat the pain.  T. 275.  Claimant complained of neck pain that radiated into his shoulder on January 12, 2012.  T. 273.  He requested a refill of his methadone prescription.  T. 273.  A physical exam by Dr. Belk indicated plaintiff's "neck really looks normal."  T. 273.  Plaintiff continued to complain of chronic pain and request refills of methadone in 2012 and 2013.  T. 265, 269, 271, 300-01. On November 2, 2012, and May 8, 2013, claimant requested pain medication but reported no pain.  T. 267, 296-97.

On August 2, 2013, plaintiff visited Dr. Belk and complained of frequent heartburn.  T. 318.  Plaintiff stated "he is here to complete disability paperwork."  T. 318.  His pain level was reported as zero.  T. 318.  Dr. Belk completed a Physical Capacities Evaluation form indicating claimant could: lift twenty pounds occasionally and 10 pounds frequently; sit for two hours and stand or walk for six hours in an eight-hour work day; occasionally bend or stoop, climb stairs or ladders, reach overhead; and rarely work with or around hazardous machinery.[7]  T. 305.  On the form, Dr. Belk predicted Mr. Spinks would be absent from work more than four days per month as a result of his impairments.  T. 305.  On a Clinical Assessment of Pain form, Dr. Belk indicated: "pain is present and found to be intractable and virtually incapacitating this individual"; physical activity such as walking, standing, sitting, bending, stooping, and moving the extremities causes some increase in pain but not to such an extent as to prevent adequate functioning in such tasks; and "drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc."  T. 306.

On October 23, 2013, claimant reported he was falling asleep easily and had stomach and leg pain.  T. 320-21.  Plaintiff reported flu-like symptoms on November 5, 2013.  T. 324-27.  He continued to take methadone for pain.  T. 320, 324.

On March 22, 2013, Dr. Richard Hawthorne performed a consultative examination of Mr. Spinks.  T. 286.  Plaintiff reported undergoing cervical fusion surgery "approximately 3 years ago."  T. 286.  Plaintiff complained of neck pain radiating to his left arm.  T. 286.  After examining plaintiff's neck, Dr. Hawthorne

---

[7] According to the Physical Capacities Evaluation form, "occasionally" means 6% to 33% of an 8-hour work day and "rarely" means 1% to 5% of an 8-hour work day.  T. 305.

noted it was "supple" and there was "no thyromegaly, no JVD, [and] no carotid bruit[.]"  Dr. Hawthorne, however, did note a "decreased cervical range of motion." T. 287.  The remainder of Dr. Hawthorne's physical exam revealed: normal range of motion in all extremities; "5/5 upper and lower muscle strength testing"; normal fine grip dexterity and grip strength; "patient can heel and toe stand without difficult[y] and ambulate without an assistive device; "gait is grossly normal with normal pace"; and "paraspinal hyperspasticity is present in the cervical spine."  T. 287.  Dr. Hawthorne found Mr. Spinks suffered from cervical degenerative disc disease.  T. 287.

As part of claimant's disability application process, Dr. Carlos Suarez reviewed the medical record and offered his opinions as to claimant's functional limitations. Dr. Suarez found plaintiff was limited to: occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking (with normal breaks) about 6 hours in an 8-hour workday; sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday.  T. 88.  Dr. Suarez concluded claimant was "capable of at least light work."  T. 89.

## ANALYSIS

Mr. Spinks claims: (1) the ALJ erred by not giving great weight to the opinion of Mr. Spinks' treating physician, Dr. William Belk; (2) the ALJ's finding that Mr. Spinks is capable of performing medium work is not supported by substantial evidence; and (3) the ALJ erred by failing to properly assess Mr. Spinks' mental residual functional capacity as required by SSRs 96-8p and 85-15.  (Doc. 10, p. 5).

<u>Treating Physician</u>

Claimant first asserts the ALJ erred by discounting the opinion of the treating physician, Dr. Belk.  (Doc. 10, p. 5-12).  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting

the opinion; (4) its consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(c)(2).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."  *Phillips*, 357 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006).

Here, the ALJ afforded no weight to Dr. Belk's opinions as expressed on the Physical Capacities Evaluation and Clinical Assessment of Pain forms.  The ALJ noted the "opinions are contradicted by Dr. Belk's office notes . . . , the claimant's wide range of activities of daily living, and the absence of hospitalizations."  T. 22.  The ALJ noted "Dr. Belk apparently relie[d] quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of that the claimant reported."  T. 22.  After reviewing the record, the undersigned concludes the ALJ's decision to afford no weight to Dr. Belk's opinion is supported by substantial evidence.

As an initial matter, Dr. Belk's opinions appear on two pre-printed check-off forms.  T. 305-06.  Dr. Belk did not cite to any medical evidence, and certainly not to his own office notes, to support the answers to questions on these forms.  *See Teague v. Astrue*, 638 F. 3d 611, 616 (8th Cir. 2011) ("Given that the "check-off form" did not cite any clinical test results or findings and [the doctor's] previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the [form] was entitled to "little evidentiary weight.").    The law

concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form. Such opinion evidence will not bind the Commissioner. Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

Moreover, Dr. Belk's conclusory opinions are not supported by his treatment notes, which are fairly benign and consist mainly of claimant's subjective complaints of pain and persistent requests for narcotic pain medication. Indeed, on several occasions plaintiff requested pain medication despite experiencing no pain. T. 267, 277, 279, 281, 296-97. Claimant also reported that he "overdid it" with his pain medication, taking it more frequently than prescribed. T. 279. Dr. Belk's most recent treatment notes from October and November of 2013 do not reflect any complaints of neck pain. T. 320, 324. On the very day Dr. Belk indicated on one of the forms that Mr. Spinks' pain was "intractable and virtually incapacitating," T. 306, plaintiff had actually reported a pain level of zero. T. 318. These inconsistencies provided the ALJ with good cause to assign no weight to Dr. Belk's conclusory opinions.

In addition, Dr. Belk rarely charted physical examinations of Mr. Spinks.  T. 265, 267, 269, 271, 275.  In March of 2010, when Dr. Belk did examine claimant's neck, he indicated: "supple, no cerivcal lymphadenopathy noted. No Bruits or Masses."  T. 282.  After an examination on January 12, 2012, Dr. Belk noted plaintiff's neck "really looks normal."  T. 273.  Dr. Belk did not order diagnostic imaging of plaintiff's spine and no reports of MRIs or X-rays appear in the record. The lack of objective evidence detailing the severity of plaintiff's condition is not dispositive to the claim of disability.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)) ("Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence").  Nevertheless, the absence of such findings would reasonably direct a fact finder's attention to plaintiff's credibility, especially when, as here, Dr. Belk's opinion largely reflected plaintiff's subjective pain complaints. T. 22 ("Dr. Belk apparently relie[d] quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of that the claimant reported.").

Here, the ALJ found "good reasons for questioning the reliability of the claimant's subjective complaints."  T. 22.  First, the ALJ noted Mr. Spinks worked after his alleged disability onset date, although that work did not rise to the level of substantial gainful activity.  T. 17.  Next, the ALJ noted claimant received unemployment benefits after the alleged disability onset date. T. 18.  The ALJ stated "acceptance [of unemployment benefits] shows that the claimant was actively applying for work, claimed to be available for work and held [himself] out [to] another agency to be able and willing to work during the adjudicative period.  This

affects the claimant's overall credibility regarding self-reported information."  T. 18.  These reasons provide substantial evidence to support the ALJ's credibility assessment.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").  Because Dr. Belk relied primarily upon claimant's subjective complaints when formulating his opinions, the accuracy of those opinions is undermined.  Based on the conclusory nature of Dr. Belk's opinions and their lack of support in the record, the ALJ certainly articulated good cause to reject his opinion.

A footnote in plaintiff's brief observes that the ALJ failed to "discuss or evaluate the weight given to the opinions" of Dr. Carlos Suarez, the reviewing, non-examining physician.  (Doc. 10, p. 10, fn. 1).  Plaintiff notes Dr. Suarez's opinion is consistent with that of Dr. Belk.  (Doc. 10, p. 10).  After reviewing the medical history, Dr. Suarez concluded claimant could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an 8-hour work day; sit (with normal breaks) for about six hours in an 8-hour work day.  T. 78.  Dr. Suarez determined claimant was capable of at least light work.  T. 79.

Federal regulations provide that every medical opinion in the record should be evaluated.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, *3 (M.D. Fla. Nov. 21, 2014) (*citing Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)) ("The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor.").  The ALJ's

failure to discuss the opinion of Dr. Suarez, however, constitutes harmless error. Courts will disregard any errors or defects in a lower tribunal that "do not affect any party's substantial rights." Fed. R. Civ. P. 61; *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to a Social Security appeal). Because the limitations described by Dr. Suarez were similar to those identified by Dr. Belk, an independent discussion of Dr. Suarez's opinion would have largely duplicated the ALJ's discussion of Dr. Belk's opinion.  Moreover, Dr. Suarez never examined Mr. Spinks; Dr. Suarez, therefore, could not provide independent observations concerning claimant's physical or medical condition.  *Cf. Stafford v. Colvin*, No. 8:13-CIV-3006-T-17-MAP, 2015 WL 224651, *4 (M.D. Fla. Jan. 15, 2015) (failure of ALJ to weigh or consider treating physician's statement that claimant was unable to work is not grounds for remand when ALJ discussed the physician's medical records); *Ricker*, 2014 WL 6610849 at *7-8 (finding ALJ's failure to assign weight to examining doctor's opinion to be harmless error when ALJ examined the doctor's findings and they were consistent with a treating physician's opinion that was rejected).  Plaintiff also concedes that "Dr. Suarez did not have access to the entire medical record when he made his statement." (Doc. 10, p. 14). Thus, even if aspects of Dr. Suarez's opinion support the conclusions of Dr. Belk, substantial evidence–discussed above–still supports the ALJ's rejection of Dr. Belk's opinion.  *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (*citing Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981)) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.").

Case No. 3:14cv329/LC/CJK

Physical Residual Functional Capacity

After considering the record, the ALJ determined claimant had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." T. 19.  As more expansively articulated by the ALJ, "claimant could lift and carry no more than fifty pounds occasionally and twenty pounds frequently.  The claimant would have no restriction on standing, sitting or walking.  The claimant is unable to use overhead reaching bilaterally.  The claimant should avoid all climbing of ladders or scaffolds.  The claimant should avoid all unprotected heights and dangerous equipment." T. 19.

Plaintiff asserts the ALJ's determination that Mr. Spinks is capable of performing medium work is not supported by substantial evidence because "the record does not contain any physical RFC assessments completed by a treating, examining, or reviewing, non-examining physician which support the ALJ's RFC assessment." (Doc. 10, p. 12).  Contrary to plaintiff's assertion, the ALJ's formulation of claimant's RFC does not have to based on a particular RFC assessment completed by a physician.  *See Green v. Soc. Sec. Admin*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (finding physicians' treatment notes which did not contain a RFC assessment sufficient to support the ALJ's RFC determination).  Moreover, claimant bears the burden of establishing disability.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled.").  Plaintiff offered only his own testimony and Dr. Belk's opinion to support his disability claim.  As discussed previously, substantial evidence supports the ALJ's finding that claimant lacked credibility.  The ALJ also properly rejected Dr. Belk's opinion as conclusory and unsupported by the record.

Here, the ALJ assigned "significant weight" to the opinions of Dr. Hawthorne, the consultative examiner.  T. 22.  The ALJ found Dr. Hawthorne's opinions "consistent with the medical evidence of record as a whole."  Claimant contends "Dr. Hawthorne did not evaluate or even discuss Mr. Spinks' functional limitations such as his abilities to lift, carry, sit, stand, walk, push, pull, climb, balance, bend, or stoop." (Doc. 10, p. 13).  Although Dr. Hawthorne may not have expressed plaintiff's limitations in terms of an RFC assessment, the doctor did conduct a thorough examination of plaintiff and recorded the findings.  He noted claimant had "decreased cervical range of motion" but "normal [range of motion] of all extremities, no crepitus, 5/5 upper and lower muscle strength testing, fine grip dexterity is normal, grip strength is normal, Patient can heel and toe stand without difficulty, patient ambulates without an assistive device.  Gait is grossly normal with normal pace. Patient can remove shoes and socks and replace without difficulty."  T. 287.  In addition, the ALJ noted Mr. Spinks worked after the alleged disability onset date, T. 17, and there was no objective medical evidence supporting a more limited RFC.  T. 20.

The ALJ-formulated RFC, which took plaintiff's impairments into consideration by limiting him to medium work with several additional restrictions, is supported by substantial evidence.  The ALJ was not under an obligation to seek out additional medical opinions to supplement the record.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("The claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim."); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to render a decision, no showing of

prejudice is made).

Mental Residual Functional Capacity

Mr. Spinks' third contention–that the ALJ failed to properly assess claimant's mental residual functional capacity as required by SSRs 96-8p and 85-15–is also unavailing.  (Doc. 10, p. 17-19).  Claimant asserts the ALJ "did not evaluate or even discuss Mr. Spinks' ability to understand, carry out, and remember simple instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (*Id.*, p. 19).  Claimant further asserts the ALJ "failed to express Mr. Spinks' pain 'in terms of work-related functions.'"  (*Id.*).  Plaintiff points to complaints made to Dr. Belk, T. 320, his own hearing testimony, T. 39-40, 42-43, a witness statement from his sister, T. 236, and Dr. Belk's opinion, indicating plaintiff's pain was "virtually incapacitating[,]" and medication side effects "can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc[.]"  T. 306.  According to plaintiff, these matters all support the presence of mental limitations.  (Doc. 10, p. 19).  As discussed above, however, the ALJ's decision to afford little weight to Dr. Belk's conclusory opinion is supported by substantial evidence.   The ALJ also offered adequate support for discrediting plaintiff's subjective complaints of pain and drowsiness.  Although claimant's sister submitted a statement indicating she "witness[ed] him fall to sleep after taking the med[ication] about 1 [hour] later[,]" she also stated she lives in a different city from claimant and doesn't "know to[o] much about his home life."  T. 236. Unmentioned by plaintiff is the inference, itself gleaned from Dr. Belk's chart, that plaintiff overused narcotic medication.   Thus, the ALJ's failure to mention the sister's

statement does not constitute reversible error.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotation omitted) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision, so long as the ALJ's decision" enables a reviewing court "to conclude that [the ALJ] considered [claimant's] medical condition as a whole.").  In addition, the ALJ's decision noted claimant complained of drowsiness at the hearing.  T. 20.  This indicates the ALJ was aware of the alleged drowsiness but, implicitly, determined it did not result in any limitations to claimant's residual functional capacity.  Thus, the ALJ did not err by failing to express plaintiff's pain or drowsiness in terms of work-related functions.

## CONCLUSION

In sum, the ALJ's determination of plaintiff's residual functional capacity is supported by substantial evidence.  The ALJ also had good cause to discount Dr. Belk's conclusory and unsupported opinions.

Accordingly, it is respectfully RECOMMENDED:

1.     That the decision of the Commissioner be AFFIRMED and plaintiff's application for Disability Insurance Benefits and Supplemental Security Income be DENIED.

2.     That the clerk be directed to close the file.

At Pensacola, Florida this 21st day of May, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:14cv329/LC/CJK